Good morning, Your Honors. Theodore J. Butriss, Jr., representing New Prime. I'd like to reserve three minutes for rebuttal. This Court should reverse the District Court's ruling denying New Prime's motion to compel arbitration ordering that discovery and summary judgment proceedings occur instead, concerning the Section 1 exception to the Federal Arbitration Act. The Court's ruling would defeat the principal objectives of the Federal Arbitration Act by defeating the speedy resolution, the streamlined proceedings that the Supreme Court and this Court have focused on in terms of why Congress enacted the statute in the first place. There are several reasons for reversing. Let me start with the arbitrability issue because I think it's simple and straightforward. We have a valid delegation clause here where the parties agree to delegate all issues, any disputes including arbitrability issues, to the arbitrator to decide. The Supreme Court in the Rent-a-Center case said that delegation provisions like this are simple and to seek additional agreements to arbitrate the issues that will go to arbitration. That's what we have here. That triggers the Federal Arbitration Act Section 2. And then the question, is there an exception to Section 2? But you don't even get into the Arbitration Act if you have a Section 1 exception. Doesn't the Court have to make that threshold determination? We don't think so, Your Honor, that where there's an agreement to arbitrate arbitrability issues, to question whether there's a contract of employment that would trigger the exception is like any other arbitrability issue. And I think to me the best example why the notion that the FAA doesn't apply yet, if we look at cases where there wasn't a delegation clause or an issue going to the arbitrator, the Supreme Court has interpreted the Section 1 contract of employment exception. The Court has applied the FAA principle. So let's say you have the broadest possible, best view delegation clause you could have, and you file an action to compel arbitration under the Act. And suppose the claim is that the Federal Court in which you filed it lacks subject matter jurisdiction to exercise the relief, to grant the relief you've asked. I assume you would agree that that Court, before it does anything, has to determine whether it has the power to even act as a court, whether it has the jurisdiction. That would be a very different situation, Your Honor. And it also would need to engage potentially in fact-finding that was relevant to that determination. Same question. The question is whether there's been a default of your arbitration rights by delay. You litigate a suit for six months, then you file a motion. Under the default provision of the statute, it seems to me the Court would need to determine whether you've defaulted and would do fact-finding and make a judgment. I'm having trouble seeing why the exemption under the statute that basically says the Act doesn't apply to certain types of contracts, why a court, as the very first thing that it does, doesn't have to figure out does the Act apply because you want me to act under the Act. If I might add in just a little bit more to Judge Chiara's question, suppose it was a contract between a railroad and a railroad employee and it had an arbitration provision. So first, if we were talking about subject matter jurisdiction, clearly an Article III court has an obligation to determine its subject matter jurisdiction. The FAA does not create subject matter jurisdiction, so federal courts have always had the inherent power to enforce agreements between parties, including arbitration clauses, form selection clauses, and venue clauses. So that's point number one. Point number two, with respect to whether this is a threshold question that the courts need to decide, I don't think so because there are instances where you're looking at an arbitration agreement and making certain determinations where there's no delegation clause. But if there's a delegation clause that says the parties agree that all issues concerning arbitrability go to the arbitrator, and Rent-A-Center, I think, makes that very clear. But Rent-A-Center is very different. It doesn't deal with this issue at all. And the struggle I'm having is when you invoke the court's power to do something, the court has to make a threshold determination as to whether it has the power to do something. When Congress deprives the court of power to do something in statute, the court can't abandon, abdicate its responsibility there. It has to make that judgment as to whether it has the power to do what you want. And that's very different from determining whether a particular issue is within or outside the scope of an arbitration clause. Well, I think here part of the court exercising its responsibility is applying the principles of the Federal Arbitration Act, which say where there's any question, the Moses-Cohen case said this, any question or doubt concerning whether an issue is arbitrable. And even the Ninth Circuit in Van Dusen said it was a close question because here you have to look at the merits of employment versus independent contractor status. So as part of the court's obligation, the FAA applies in federal court. We know there's a strong federal policy favoring arbitration. It would be helpful if you could be specific, and if you could go back to Judge Thompson's question because it seems to me you put a good, helpful point on it. You've got an arbitration agreement between a railroad and a railroad employee. The railroad then moves under the act to compel arbitration or a delegation clause. What happens? I think there, if there were questions that the railroad raised, that for some reason this employee wasn't involved in commerce, if the person wasn't actually an employee and there was a delegation clause, that would go to the arbitrator. But if it was undisputed that the individual was an employee and was engaged in commerce, then under those circumstances I don't think the railroad would have a grounds for moving to compel. No. But here where the funds Well, isn't that the argument that the other side is making here, that they're clearly contract workers engaged in commerce and covered by the exception? Well, they're arguing They're making the same argument that they're similarly situated to a railroad worker, which the court would, based upon your answer, would have to make that decision. No, you're right. Here, the contract that's involved is not a contract of employment on its face, both in terms of how the parties characterize themselves as independent contractors. It's a contract between two companies. It's not a contract between an individual and the trucking company. The elements, the freedom, the flexibility of the individual and the company to not carry loads, all the features of an independent contractor relationship are present, and that's the question for the merits. The claim here is that the independent contractor agreement should be set aside and we should look at how things play out in practice, and therefore benefits as an employee should be obtained. That's the merits of the claim, and that's why this should go to arbitration, so the courts don't resolve the merits before getting to the arbitration question. Come back to the railroad employee. Let's assume, if I follow your answer, as long as the railroad utters the words without obvious frivolousness that we don't think the guy is an employee, then the court would have the power, under your analysis, to compel arbitration. Correct. Even without deciding whether the act applies, because it doesn't yet know whether the exemption applies. In my view, and this is just me saying this. I think you're saying yes. Yes. What would then happen? The arbitrator then accepts this very weak argument that the person is not an employee and rules, and then there's an appeal or action to enforce the arbitration. What does the court now do on whether the act applies? Is it bound by what the arbitrator did? Yes, Your Honor. So I think your whole analysis then suggests that the legal question of whether the act even applies in the face of Congress's direction on the exemption is determined by the arbitrator, not the court. That seems to be the inherent logic of yours, subject to very limited review by the court. Yes, Your Honor. That's no different than the arbitrator deciding whether an arbitration agreement is valid or unconscionable. If it's unconscionable, then it's invalid and the FAA doesn't apply it. Under Section 2, under Rent-a-Center, we know that's what the Supreme Court has said. And so I think we have to assume that the arbitrator would be fair and reasonable. That's what the FAA says. That's what Italian colors from the Supreme Court says. I don't see a difference between a dispute about whether something is within or without the scope of an arbitration agreement and a dispute about whether the court has the power to exercise its authority to compel arbitration. Those don't seem like distinct arguments to you that need to be addressed differently. I think that I agree, Your Honor, that that's why we're here, that they're not exactly the same. But I think in terms of the legal effect, they are the same. And I go back to Circuit City. The Supreme Court interpreted Section 1 to determine whether that case was within the FAA. There wasn't a delegation issue. The court didn't say, well, since we don't know whether the FAA applies, we're not going to apply the strong policies favoring arbitration. We're not going to take a narrow reading of the provision. Instead, it applied the FAA in determining the scope of the exemption. And I think that same analysis applies to determining whether these arbitrability issues are going to be arbitrated or stay in court. You want us to say that what Congress really meant to say here, and we should deem it said it, was that as long as someone is claiming someone is not a Seaman railroad employee or a transportation worker, the district court has the power to compel arbitration. Yes, as long as they have a good faith... But it didn't write it that way. It just said it hinged it not on whether someone has a good faith agreement, not on whether there's a dispute. It hinged it on the existential fact of whether someone is one of these three types of workers. But it's an exception in order to Section 2. It's a definitional, and the title is exception. And so we start with the premise this is a valid agreement in interstate commerce. It has an arbitration. It's a mini-arbitration agreement, the delegation clause. That's what Rent-A-Center said. So we know at that point the FAA is triggered. Then the question, is there an exception? The parties agreed that that kind of question would go to the arbitrator, and then the arbitrator can decide that issue. And it's really functionally, going to Your Honor's question, it's a different inquiry, but functionally it's the same. And in making that determination, the FAA's background principles apply. But you're really saying that if we rule that way, you're saying that the arbitrator in essence has the authority to make a determination as to whether the court can compel the arbitration. It seems to me it's putting the cart before the horse. I don't think so, Your Honor. I think that it's to me functionally no different than the arbitrator deciding this is a valid or invalid arbitration agreement. If it's invalid, then there wasn't an agreement that triggered the FAA. Okay, but let me just address briefly before I sit down and let my friend on the other side address these issues, that if the court says this is an issue for the courts, then I think the court should also reverse. Because, first of all, Circuit City says we take a narrow reading, a precise reading of the provision that says contracts of employment. Here we have an independent contractor agreement on its face. No court has held that independent contractors are swept into that contract of employment provision. Aren't those often very fact-specific questions on which some limited discovery ought to be allowed? Well, Your Honor, the problem, they are fact-specific. Those are issues that should be adjudicated under merits by the arbitrator if this is an arbitration issue, an arbitrable issue, which we think it is. To allow discovery, I point the court before I sit down to the end of Italian colors, this is one of the Supreme Court's most recent statements on arbitration, where the court said that allowing a superstructure of the judiciary to look at the merits before determining these arbitration issues would frustrate the benefits of arbitration, the speedy resolution, the streamlined process. And here we have to have full-blown discovery on the fundamental merits question of the case. This court in Berengson followed the AT&T Technologies case that said, we shouldn't plunge into the merits before deciding whether the case should be arbitrated because it will defeat the purposes of the FAA. And I'll reserve the rest of my time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Jennifer Bennett on behalf of Appellee Dominic Oliveira. Now both of the main questions in this case, one, whether employers can circumvent the Federal Arbitration Act's exemption for transportation workers just by calling them independent contractors. And two, who decides that question? Both of these questions are answered by the text of the Federal Arbitration Act. Now I'll start with the first, rather the second question first, which is who decides? Now here, Prime explicitly, and this is in their district court reply brief on page 6, Prime explicitly asked the district court to compel arbitration based solely on the FAA. And what the FAA says is nothing, nothing contained in this act, shall apply to contracts of employment of transportation workers. So if the contracts at issue here are contracts of employment, the court could not possibly grant Prime's request to use the FAA to compel arbitration. If it did, it would have violated the Federal Arbitration Act. And the delegation clause doesn't change this analysis. And there are two reasons for that. First, and most importantly, as the Supreme Court held in Renda Center, a delegation clause is just another kind of arbitration agreement. So if Prime's contracts are contracts of employment, then the delegation clause is an arbitration agreement in a contract of employment. And what the FAA says is you can't use this statute to compel arbitration of a contract of employment. And that applies to a delegation clause just like any other arbitration agreement. And I think the subject matter jurisdiction analogy is the right one here. If there's no subject matter jurisdiction over a case, it doesn't matter what the parties put in their contract. The court has no power to compel arbitration. And that's true here. It doesn't matter what the parties put in their contract. If they're relying on the FAA to try and compel arbitration, the court has no authority to do so if it's a contract of employment. And in fact, at least twice the Supreme Court has decided for itself questions about whether a district court could compel arbitration under the FAA in cases where there was a delegation clause. And these cases are CompuCredit v. Greenwood and EEOC v. Waffle House. Now what Prime argues is, look, all the time we delegate questions to an arbitrator where if they decide one way, the court wouldn't have authority to begin with. That's actually not right. The Supreme Court has explicitly and repeatedly held in Granite Rock and in Venticenter that whatever arbitration agreement is in front of the court, the court has to decide whether that agreement is valid and enforceable and whether the FAA applies. So if the arbitration agreement is an agreement on the merits, then the court looks at that agreement. If there's a delegation clause, then that's the arbitration agreement the court is looking at. But that doesn't excuse the court from making sure that the delegation clause is valid, enforceable, that the FAA applies. And in its reply brief, Prime cites Howsam. This is on page 9 of its reply brief, and it says, The Supreme Court in Howsam compelled arbitration of the question whether the arbitration contract bound the parties. That's actually absolutely false. Howsam had nothing to do with whether non-signatories could be bound by an arbitration contract. And what Prime is citing is a parenthetical from Howsam where Howsam describes what first options did. And first options did exactly the opposite of what Prime says it did. First options said, If the question is whether an arbitration clause binds a non-signatory, that's for the court. And indeed, the Supreme Court in Granite Rock has explicitly stated twice that formation disputes, so disputes about whether someone has been bound by a contract, has validly signed the agreement. Those are always for the court, even if there's a delegation clause. And the reason for that is the same reason that the delegation clause here doesn't change anything. It's that if someone doesn't sign a contract, they've never agreed to arbitration. They've not agreed to the delegation clause either, and so the FAA doesn't apply. Same thing here. If these are contracts of employment, then the arbitration agreement on the merits, but also the arbitration agreement to arbitrate arbitrability, is in a contract of employment, and the FAA doesn't apply. So the district court would have no authority to compel arbitration. And there's a second reason that the delegation clause here is a red herring. Prime argues that there's this presumption of arbitrability. But actually, the presumption of arbitrability doesn't apply to when you're interpreting a delegation clause. That's the Supreme Court's decision in first options. And very clearly, the Supreme Court in first options says that the presumption of arbitrability only applies when we're talking about whether a merits dispute. So here, whether Prime didn't pay Mr. Olivera his wages. The presumption of arbitrability only applies to whether those merits disputes are within the scope. When we're talking about a delegation clause, first options says there's actually a reverse presumption. We assume that gateway questions are for the court to decide, unless the contract clearly and unmistakably delegates them to an arbitrator. Here, there's no clear and unmistakable delegation to an arbitrator of the question. It's clear that your position is they couldn't draft a provision that would deprive the court of the responsibility it has to determine whether it has the power under the act. So that's sort of a fallback argument, but if I'm understanding you correctly, there's no way. They couldn't draft a provision that would be specific enough to, in fact, take this issue away from the court. Absolutely, Your Honor. Even if they clearly and unmistakably said, we want the arbitrator to decide whether the district court has authority to compel arbitration, and they put that in the contract of employment and asked the district court to enforce it, the district court would still only have authority to enforce it under the FAA if it weren't a contract of employment, and so they'd have to figure that out first. And since it sounds like the court... How are you construing the word worker in the act? I'm sorry, could you ask the... How are you construing the word worker, transportation worker? Sure, so... Are you accepting New Prime's position that we should read that word essentially as employee as contrasted to independent contractor? No, Your Honor. We would argue that the exemption from the Federal Arbitration Act applies equally to independent contractors as all other workers, and the reason for that is the statute uses the term contracts of employment as the term for statutory coverage, and it's Blackwater law that when a statute uses a term and doesn't define it, what we do is we look at what the common meaning of that term was at the time the statute was passed. So here the Federal Arbitration Act was passed in 1925, and the universal meaning of the term contracts of employment was all contracts to do work, including independent contractors. So are you reading employee as also including independent contractors? More of employee? So the exception says contracts of employment of seamen, railroad employees, and any other worker, and as the amicus brief explains, while contracts of employment always had one meaning, the word employee actually varied. So for example, in the Transportation Act of 1920... Right, and my question is how are you advocating that we read it? Sure. Is employee a group of workers who are not independent contractors, or is it all workers even if independent contractors? In this particular statute, it means all transportation workers, and there are several reasons for that. So employee means workers, and workers means everyone is what you're saying. Yes, Your Honor, in the statute. And why did Congress then use the two different words, employees and workers? It seems there's a tension there because if we read employees as meaning something different than workers, and if we read workers as including independent contractors, then the statute would be rather odd because it would render the whole phrase railroad employees superfluous because it would all be swallowed by transportation workers. Sure, so there are a few reasons. First of all, at the time in 1925, Congress often used the word employee interchangeably, and because the word employee was ambiguous at that time, they almost always put other words next to it so you knew how big it was. So it's not at all surprising to see something that says seamen, railroad employees, and other workers, and so you could figure out, okay, what did they mean by employees? Oh, they must have meant all of these kinds of workers because they used seamen, which includes independent contractors. They used other class of workers, which includes independent contractors. They used contracts of employment, which includes independent contractors. And the reason they might have...Circuit City addresses this, actually. The reason they might have singled out seamen and railroad employees, which I think is your question, instead of just saying all transportation workers, is because those were the workers who were specifically objecting at the time. To resolve this appeal, do we need to deal at all with the fact that the actual contract here at issue is not with your client but is with an LLC, and they're seeking to compel your client to arbitrate under that agreement, maintaining he's bound by it, but he's not an employee. He's an independent contractor. No, Your Honor, you don't need to deal with that issue, and here's why. From the beginning, Prime has argued that we should disregard the fact that the LLC, it's signed on behalf of the LLC and has repeatedly characterized the agreement as an agreement to do work. So, for example, in its opening brief before the district court, they say, Plaintiff Dominic Oliveira entered into an agreement with New Prime to work as an owner-operated truck driver. In their reply brief, they said, Oliveira and Hallmark Trucking are factually one and the same. Before this court in their opening brief, they said, Oliveira agreed to lease a truck and to provide driving services to Prime. And the reason they've maintained this all the way through is clear. If it was really just to the LLC, if Mr. Oliveira was not personally bound to work, then under Missouri law, the arbitration agreement doesn't bind him at all. And so the whole time they've been saying, this is a contract to work, this is a contract to work, it's only in their reply brief before this court that for the first time, they're trying to argue that it's not a contract to do work. And as such, they can't have it both ways. Either it is, as they've argued the whole time, a contract to do work, in which case the Federal Arbitration Act applies, or it's a contract with a business and Mr. Oliveira didn't have to work under it at all, in which case it's not binding on him in any way. And I just want to briefly address in terms of... And which of those two branches, if either, are you suggesting is the more appropriate route? At this point, I would say the first branch, that it is a contract to do work, is the more appropriate route, but I'd be happy to talk about the LLC argument as well. It's actually very common. So in this case, what happened is Mr. Oliveira came to the company, and the company said, here are all the things you have to do to work for us, and one of those things is you have to go to this office next door, and we set up paperwork for you as an LLC, and you have to sign that paperwork. And it's very common in the trucking industry now that people are doing that as a way of bolstering misclassification, essentially. People think that it will be easier for them to get away with misclassifying people as independent contractors if they make them sign an LLC. So it's really a subterfuge. And very quickly, I just want to address Prime's two main arguments on the interpretation of the statute. One of their arguments is, well, wouldn't that leave us without a federal dispute resolution statute covering independent contractors in the transportation industry? That's actually not strange at all if we remember that the statute was passed in 1925. So that's before the Commerce Clause resolution, which means Congress didn't have the power to regulate any workers except people in the transportation industry. So almost no independent contractors, almost no workers at all, would have had a federal dispute resolution statute. In fact, if Congress had included independent contractors here, they would have basically been singling out a very small number of independent contractors to have a federal statute that nobody else had. And there's evidence actually in the hearings that Congress particularly didn't mean to do that. So on page 9 and 10 of the 1923 hearings, Congress talks about various kinds of independent contractors. They talk about stevedores, which are the people who work on docks loading and unloading boats. And they specifically talk about contractors who have contracts of adhesion, where they're bidding for a contract and someone says, here are the terms you have to sign. And in both cases, everybody said, no, no, no, those contracts are covered by this exception. Even those independent contractors, they fall within this exception. And of course, if they didn't, what Congress would have been doing is creating a conflict between the Transportation Act of 1920, which covered all railroad workers, including independent contractors, and the Federal Arbitration Act, which provided individual private dispute resolution. There's no reason to think that Congress would have created such a conflict. And the second point is a crime relies a lot on Circuit City. And they say Circuit City requires us to override what is clearly the common, universally understood meaning of the term contracts of employment and replace it with a narrower meaning. That's just not the case. What Circuit City said is you have to follow the meaning of the statute, even if you think if Congress were legislating now, they would have done something differently. So even if you think it's kind of strange, given the transformation of the Commerce Clause, what the result is, you still follow the plain meaning of the statute. And in that case, they were interpreting the residual clause, the any other class of workers engaged in commerce. And what they said is the plain meaning of engaged in commerce is narrow. It just involves transportation workers. And what the plaintiffs in the dissent in that case said is, wait, wait, wait, yes, we agree the plain meaning is narrow, but you have to remember that they would have wanted to involve all workers. And what the majority said is, yes, we agree, we think what they would have wanted to do now is probably different, but you can't override the plain meaning based on what you think Congress might have done had it known things are changed. And it did say that particularly because it was interpreting the residual clause and particularly because of the policy in favor of arbitration, it would go with the narrow reading of the statute dictated by the text. But the key there is that the narrow reading was dictated by the text. What it didn't say is you can override the text for a narrower reading you would prefer that has no root in the text. And in fact, in EEOC v. Waffle House, the Supreme Court overturned the Fourth Circuit for doing precisely that. In that case, the Fourth Circuit said, well, there's no authority textually in the FAA to compel arbitration, but there's this liberal policy favoring arbitration, and so because of that, we'll override what the text says. And what the Supreme Court said is, no, you can't do that. You have to go with the common meaning of the text. And the common meaning of the text here is very clear. The word contracts of employment always at that time included independent contractors. Prime hasn't cited even one example in any context where it didn't. So to accept Prime's argument, we'd have to think that Congress incorporated a secret meaning of the term without putting it in the statute, without mentioning it in the legislative context, a meaning that would conflict with other statutes it had already passed, and where there is no reason to do so. Thank you. Thank you. Let me start with that last point concerning Circuit City and the text. The Circuit City rejected the precise sort of argument that plaintiffs are making here, which is we should go back to 1925, figure out what the meaning of words were then, and then figure out what the meaning of the words in the statute mean now. The court said, no, we're not going to do that. We're not going to create a variable interpretation of the words in the Arbitration Act. What the court said was, this was a point I was making earlier, we look at the policies behind the FAA and we interpret the exceptions with that in mind. We take a narrow and precise reading of the language. But we still have to figure out if it applies. And it seems Congress has plainly said if it is a railroad employee, then the district court has not been granted the power to compel arbitration. And that goes back to the arbitrability issue, Your Honor. On the delegation clause. But the delegation clause itself is not effective if it's one of the exempted workers. I think it is, Your Honor. I think I come back to Judge Thompson made the cart before the horse analogy. The cart, the horse, is the Federal Arbitration Act. We know there's a strong federal policy in favoring arbitration. We know that it's triggered with an arbitration agreement in commerce. The question is, is there an exception to that? That's a dispute about what's arbitrable. That is covered by the delegation clause. And I grant you the question of whether the merits is arbitrable, that's a different question. Don't we always treat the delegation clause in effect as its own little separate arbitration agreement? Correct. And so that is an agreement you would like the court to enforce? Yes. And Congress has said if you have jurisdiction court, you can enforce that as long as it's not a railroad employee, in which case you can't enforce it. So before we enforce your little arbitration agreement here, we need to know if the district court has been granted the power to compel arbitration. Well, two things, Your Honor. Congress didn't say that the courts didn't have the power to compel arbitration. The language of the statute says that in granting this power, we're exempting it from this group. And as I said, I think that the federal district court has the power, its inherent power to enforce a contractual agreement between the parties, put aside the FAA. The courts do it all the time, form selection clauses, venue clauses. But you're not bringing your case under a state arbitration law. You're bringing it under the FAA exclusively. I think that's what your opponent specifically noted. So it's a question of whether the FAA gives us the power to do it or not. Well, I think there's two different questions, Your Honor. One is whether the FAA, this exception in terms of whether the substantive provisions of the FAA will apply to the arbitration of the merits. But with respect to the gateway issue, we have a gateway issue that's been delegated to the arbitration. And I think that the notion that only the federal courts can decide this question is a manifestation of some of the, I don't want to call it antipathy, but hostility and the skepticism that arbitrators can make a fair decision that the Supreme Court has rejected over and over again. And if I can just end with one point, going back to the definitions in the statute before I sit down, Your Honor. The question of this notion that when the statute says contracts of employment and then talks about railroad employees, that that is going to be interpreted as sweeping independent contractors is untenable. That Circuit City said, no, we look at the words in the statute if we're going to go to that next category, which is what we're talking about here. This is an independent contractor trucker, trucking business. So we have to, employees and employment are different than independent contractors. That's what the merits of the case is all about. Plaintiff brought this case saying, I'm not an independent contractor, I'm an employee, so I'm entitled to a whole array of other statutory and legal benefits, not the benefits you get as an independent contractor. So I don't think that the statute can possibly review it as sweeping independent contractors to the exception that would be exactly the kind of broad, sweeping interpretation of the statute that Circuit City said would be inappropriate. So for all those reasons, the Court should reverse, and thank you very much. Thank you.